UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

KEVIN CHRISTOPHER,

               Defendant.

MEMORANDUM
OPINION AND ORDER

21-CR-00151 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Kevin Christopher moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he has a serious physical or medical condition, is at increased risk of severe illness should he contract the COVID-19 virus, and the pandemic has rendered Mr. Christopher's incarceration harsher than would have otherwise been the case. (Doc. 45, "Mtn."; Doc. 52, "Supp. Mtn."). Mr. Christopher is currently serving a 33-month sentence at FCI Danbury ("Danbury"), a low-security federal correctional institution, after having been convicted of wire fraud on October 27, 2021, following his guilty plea pursuant to a plea agreement.

      The Court concludes that a reduction in Mr. Christopher's sentence is neither "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). The motion is, accordingly, DENIED.

## **BACKGROUND**[1]

      Mr. Christopher went on an eighteen-month shopping spree with $469,411.02 of a hospital's payroll account. He siphoned off those payroll funds and paid off enormous credit card

---

[1] The Court draws the background facts principally from the Revised Presentence Investigation Report dated November 10, 2021 (Doc. 39, "PSR"), the sentencing transcript (Doc. 44, "Tr."), and the parties' submissions (Mtn.; Supp. Mtn.; Doc. 53, "Opp.").

bills, causing fraudulent transfers to nearly a dozen financial institutions and retailers; withdrew large amounts of cash; and spent thousands of dollars on dental services, all undetected until the hospital audited its accounts. (PSR ¶¶ 7-14; Tr. at 15:10-15). On March 16, 2021, Mr. Christopher appeared before this Court and pled guilty to Count One of the Information pursuant to a written plea agreement dated March 9, 2021. (PSR ¶ 3). Mr. Christopher appeared before this Court for sentencing on October 27, 2021. (Tr. at 1). The Court calculated Mr. Christopher's Sentencing Guidelines Range at 41 to 51 months of imprisonment and, after hearing from counsel and Mr. Christopher, addressed on the record the factors considered by the Court under 18 U.S.C. § 3553(a) in determining an appropriate sentence. (*See generally id*.). The Court, following sentencing, permitted a period of more than two months for Mr. Christopher to surrender himself to the United States Marshals so that he could spend the holidays with his family (*id*. 25:23-26:12), and subsequently granted another two-month delay of the self-surrender date (Doc. 41). Mr. Christopher ultimately surrendered himself on March 7, 2022 and his projected release date is May 11, 2024.  (https://www.bop.gov/inmateloc// (last visited Sept. 27, 2022)).

Mr. Christopher filed the instant motion seeking compassionate release on June 7, 2022. The Court, on June 27, 2022, directed the Government to file a response to his motion. (Doc. 46). Mr. Christopher wrote the Court on July 7, 2022 seeking the appointment of counsel in connection with his motion (Doc. 48), which the Court granted on July 8, 2022 (Doc. 49). The Court, on application by counsel, thereafter set a briefing schedule which, *inter alia*, incorporated a period of time for any supplemental compassionate release motion. (Doc. 51). On August 24, 2022, a letter supplementing the pro se compassionate release motion was filed by defense counsel, and on August 25, 2022, the Government filed opposition. (*See* Supp. Mtn., Opp.). Counsel for Mr.

Christopher elected to forego the filing of a reply brief and therefore, the motion is deemed fully submitted and ripe for the Court's review.

## STANDARD OF REVIEW

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal [or] a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence, on a defendant's motion, if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The moving party bears the burden of proving that extraordinary and compelling reasons exist." *United States v. Rodriguez*, No. 19-CR-00012, 2020 WL 2787629, at *3 (S.D.N.Y. May 28, 2020).

"[T]he existence *vel non* of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); *see also United States v. Israel*, No. 05-CR-01039, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

3

The statutory scheme thus requires first that a court determine that a defendant has exhausted his administrative remedies, that "extraordinary and compelling" reasons exist for a reduction in sentence, and that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Once these elements are met, the Court must then consider and determine whether the § 3553(a) factors support early release. Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431. Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

## ANALYSIS

Mr. Christopher's motion under 18 U.S.C. § 3582(c)(1)(A) is based on his physical and medical condition—age, obesity, diabetes, high blood pressure, history of strokes, stage 3A kidney disease, neuropathy on his right side, blood in his stool, migraine headaches, damaged Achilles tendon—and the impact of the COVID-19 virus.

With respect to "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), the Sentencing Commission has issued a Policy Statement setting forth certain definitions. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."); *see Ebbers*, 432 F. Supp. 3d at 426. While Mr. Christopher's conditions do not place him squarely within any of the Policy Statement's definitions of "extraordinary and compelling reasons," *see*

U.S.S.G. § 1B1.13 cmt. n.1(A)-(D),[2] Mr. Christopher asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 because of these underlying ailments, constitutes an "extraordinary and compelling" reason for his release. (Supp. Mtn. at 2-3).

The Court accepts that the COVID-19 pandemic could qualify as an "extraordinary and compelling" reason, as preexisting conditions such as those suffered by Mr. Christopher would likely place him at higher risk of complications should he contract COVID-19. *See, e.g., United States v. Parker*, No. 20-CR-00224-2, 2022 WL 1093710, at *11 (S.D.N.Y. Apr. 5, 2022) (citing Centers for Disease Control and Prevention literature concerning extra precautions for people with medical conditions). Mr. Christopher, however, has had access to, and received, two doses of a COVID-19 vaccine as well as a booster shot. (Mtn. at 2). "Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk." *United States v. Mena*, No. 16-CR-00850, 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021). "Indeed, courts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no longer extraordinary and compelling." *United States v. Kosic*, No. 18-CR-00030, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (citing *United States v. Johnson*, No. 94-CR-00631, 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021); *United States v. Poupart*, No. 11-CR-00116, 2021 WL 917067, at *1-2 (D. Conn. Mar. 10, 2021); *United States v. Harris*, No. 18-CR-00628, 2021 WL 848865, *1 (E.D.N.Y. Mar. 5, 2021)). Mr. Christopher has also not proffered any evidence that he is unable to manage his

---

[2] Where, as here, the motion is brought by a defendant as opposed to the BOP Director, the Court is not constrained to the definitions set forth in the policy statement, and has discretion "to determine what reasons, for purposes of compassionate release, are extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

medical needs in prison. *See United States v. Bush*, No. 18-CR-00907, 2021 WL 199618, at *2 (S.D.N.Y. Jan. 20, 2021). Under these circumstances, Mr. Christopher has not established that his health conditions make his risk from COVID-19 an extraordinary and compelling reason warranting a sentence reduction.

Moreover, granting Mr. Christopher a reduction in sentence would be neither "consistent with the applicable policy statement issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). Thus, even if the Court found Mr. Christopher's application sufficient to establish "extraordinary and compelling" reasons, the Sentencing Commission policy statement also requires that the Court find that "the defendant is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2); and the Court's determination must then also be supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). This, the Court cannot do.

Mr. Christopher has failed to address, much less sustain, his burden of proof that a reduction would be consistent with the applicable policy statement that he is not a danger to the safety of any other person or to the community. The Court, at sentencing, noted the need to protect the public from further crimes; Mr. Christopher's lengthy criminal history, coupled with the conduct in this case which occurred over an eighteen-month period and only stopped when he was caught, were factors warranting the 33-month sentence imposed. (Tr. at 19:23-20:14). Mr. Christopher does not suggest that, since this Court's findings at his sentencing he is no longer a danger to the community or incapable of engaging in the same type of behavior that led to his incarceration. *Cf.*, *United States v. Asaro*, No. 17-CR-00127, 2020 WL 1899221, at *1, *7 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to a previously violent defendant because his physical ailments, including expressive aphasia, made it unlikely that he remained

6

capable to orchestrate complex criminal schemes); *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (granting compassionate release to a blind, wheelchair-bound defendant who required round-the-clock care and had an estimated eighteen months to live).

In addition, and again assuming Mr. Christopher had made a sufficient showing regarding "extraordinary and compelling" reasons and established that his release would be consistent with the applicable policy statement, which he has not, the § 3553(a) factors, which also must be considered on this application, do not support early release. These factors, such as "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct" also weigh against Mr. Christopher's early release. 18 U.S.C. § 3553(a). Although Mr. Christopher has expressed concern that his medical conditions are not being adequately addressed during his incarceration and therefore the punishment imposed for the offense is unjust, Mr. Christopher has received daily medical attention while incarcerated and was admittedly referred to an external hospital for treatment. (Mtn. at 2; Opp. at 7). His request for a reduction of his sentence to "time served with three years of supervised release" (Supp. Mtn. at 10) does not square with all the factors the Court must and has considered under § 3553(a).

The Court imposed a sentence significantly below the Sentencing Guidelines Range. At this time, Mr. Christopher has served approximately one-fifth of that sentence. Release at this relatively early stage would not reflect the seriousness of Mr. Christopher's conduct, nor would it promote the needs for deterrence and to protect the public. Moreover, Mr. Christopher has not shown any reason that the sentence imposed by the Court is no longer sound. Indeed, the Court, at Mr. Christopher's sentencing, fully accounted for the arguments he now raises. The Court was

already aware of, and specifically considered at sentencing, Mr. Christopher's health conditions and the impact of COVID-19 on prison conditions, as follows:

> COVID-19 creates a harsher set of circumstance for every individual incarcerated. . . . I do recognize that because of the COVID protocols for inmates incarcerated, the lockdowns and the medical issues that get created by people having COVID are real. I understand that. . . . [T]o your point, of course, I have to consider the reality for this individual of COVID-19. There's no question a mitigating factor in my mind -- and, by the way, just so the record is crystal clear, I believe that what I'm imposing is a downward variance from the proper guidelines, 41 to 51 months . . . .
>
> I also understand that you suffered from a stroke, you have numbness, you walk with a cane at times, you have high blood pressure, obesity, some nerve pain, and I've read your doctor's letter that you have type 2 diabetes and hypertension, a mitigating factor for me.

(Tr. at 16:7-17:1, 17:24-18:3).

Simply put, the Court's sentence in October 2021 remains the appropriate sentence today.

## CONCLUSION

Based on the foregoing, Christopher's motion under 18 U.S.C. § 3582(c) is DENIED.

The Clerk of the Court is respectfully requested to terminate the pending motion (Doc. 52). Defense counsel is directed to provide a copy of this Memorandum Opinion and Order to Mr. Christopher.

SO ORDERED:

Dated: White Plains, New York
September 28, 2022

_____
Philip M. Halpern
United States District Judge